THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ALBERTO HERNÁNDEZ RIVERA, Defendant and Appellant.

Nos. 17311, 17312.   Decided May 25, 1962.

*William Fred Santiago, Rafael A. Escudero Bonilla,* and *Lolita Miranda Escudero* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Jorge Zequeira Olivero,* Assistant Solicitor General, for The People.

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

PER CURIAM.

Appellant was convicted of the crime of murder in the second degree and of carrying weapons. The offenses occurred in Juncos. The victim, on the day of the occurrences, was walking with Juana García with whom he lived. When passing a group of persons, one of the group voiced an expression which is manifested as "sui", which expression the victim believed had been addressed to his companion, and according to this witness: "Then my husband looked back and said 'what do you mean sui?', that he was a person who liked to be respected when he was with his wife and he did not like jokes, either." On account of what was said by the victim, defendant, who was in the group from where the expression was voiced, came forth and called him s... of a b..., and the victim answered that "he was more of a s.. of a b..." Then the defendant picked up a stone to throw at the victim. The other persons intervened to prevent an assault and defendant "dropped the stone and stood in the corner of a porch next to a telegraph post." And

the witness continues to testify that "when my husband said, "let's go and have something to eat," defendant passed by him with his hand behind his back, and when my husband stood next to him defendant stabbed him, then my husband put his hand in his chest and fell to the ground." To questions as to how he stabbed him she answered "by sticking a knife in him." The autopsy revealed that the body showed "a wound in the anterior mammary line, in the sixth intercostal space, about two inches under the nipple," a penetrating wound which "went to cut the anterior part of the left lung," "and even went to puncture the pericardium, the wound followed a trajectory going towards the vertex of the heart and this wound was about 1½ inches or 1¾ inches in size," and "came out on the underside of the heart."

Appellant assigns five errors to support his appeal.

1. The first one of the errors assigned refers to the way in which the district attorney impeached the statement of a witness for the defense. The witness in question appeared as witness for the prosecution, but the district attorney did not use him.

In *People* v. *Lebrón,* 61 P.R.R. 634, 650 (1943), we summarized the procedure for challenging the credibility of a witness. To that effect we stated:

"The document by means of which the witness is to be impeached should be shown to him before he is questioned in relation to the same. The purpose for which the law requires that the statement be shown to him before he is questioned as to the contents of the same is to allow the witness to read it or have it read to him, and once aware of its content, he should be asked whether or not he wrote it or signed it, and if he admits it, his attention should then be called to the contradictions or inconsistencies which may exist between his first statement and his oral testimony, also allowing him to relate the facts or circumstances which may explain or reconcile the inconsistent statements or that show their relation among themselves and the significance and purpose of the same. Once the witness admits the authenticity of the written statement, it will be offered in evidence, and

once admitted, it will be read to the jury as the best evidence of what the document contains. In that way the jury may determine if in reality the contradiction exists and will give the oral testimony the credit to which it may be entitled."

█ What happened in the case at bar complied substantially with the established requisites. On page 83 of the transcript of evidence the court states as follows:

"He has been given the document to read; he has read it. To this question, if it appears therein, he has to answer, yes or no."

The district attorney also asked him whether he testified under oath before him and the witness answered in the affirmative. The explanation given by the witness was that what he is now testifying—that the victim had attacked defendant with a jackknife—in spite of the fact that it did not appear in the sworn statement, he had testified it before the district attorney. The sworn statement was introduced in evidence and although it does not appear that it was read before the jury, obviously the jury could have considered it when it was deliberating.

█ In like manner he challenges the instructions given by the judge on the issue of the impeachment of the witness, on the ground that "the trial court at that moment was expressing its opinion before the jury, which was the one trying the cause and necessarily upon its being so, the trial was prejudicial to the best interests of the defendant and of the substantial justice pursued in every trial."

A reading of the instructions will reveal the frivolousness of the contention set forth.

█ 2. The second error assigned alleges that the presiding judge (a) upon summarizing the evidence, put words in defendant's mouth, which he had not stated; (b) put words in the mouth of the only witness for the prosecution which she never stated. And in the third place the court also erred in discrediting witness Juan Flores García—upon sum-

marizing the evidence to the jury—with certain declarations he never stated in the witness stand. And finally, the court erred in summarizing to the jury and in assigning certain declarations to Juana Reyes García in her testimony, as "rebuttal" evidence which were not stated by her in the witness stand.

Let us consider the previous assignment part by part. Appellant himself affirms that "it could be argued that the same [referring to the declarations he challenges] did not have the scope nor extent necessary to prejudice defendant adversely by themselves." Then he proceeds to express that it would be so if they were taken separately, but the truth is that all of them as a whole are adverse to him and prejudice him. Let us see whether this is so:

Appellant begins by indicating that on page 129 of the transcript of evidence the judge stated:

"Pomales Castrillo [the victim] passed by with his wife and that defendant faced Pomales when the latter asked him the meaning of the word 'sui' which he had heard and which he had just uttered."

The judge did not give an obviously accurate relation of what happened. But his version does not alter the fundamental fact. It was immaterial who had pronounced the word for the first time. The truth is that when the deceased faced the group, defendant was the one who came forth. It was really not of main importance who was the one who pronounced the word. The attack which caused the death occurred after this incident when everything had already apparently been settled.

The other question which he challenges refers to the statement of the judge upon summarizing Juana García's statement "that there was nothing between Alberto and her husband at the moment in which Alberto was sticking him with the knife." It is true that it can not be strictly said that the witness stated that there was nothing between Alberto

and her husband, but the truth is that the facts such as they were narrated by her show that at that moment there was nothing between the deceased and defendant, and that upon passing next to where the latter was standing, it was while using the word used by the witness that he "stabbed" him with the knife.

■ Appellant complains that in summarizing the evidence and referring to the testimony of witness Juan Flores, a witness rejected by the district attorney and used by the defense, the judge expressed himself as follows: "The witness identified his signature in the statement which he gave before the district attorney and testified that he did not include in the statement *that* about the deceased throwing the knife at defendant, but that he stated it." The objection consists in the use of the term "that" which appellant believed discredited his case. We do not believe that the use of the term "that" by the judge under these circumstances caused that impression upon the jury. It seems that it was the simplest way which the judge thought he could explain to the jury the question of the impeachment which the district attorney was making of the testimony of the witness during the trial. An important element was introduced as to which he had not testified before the district attorney: that the deceased had a jackknife and that he took it out upon facing the defendant. To describe this fact with the word "that" could not prejudice the defendant.

Appellant objects that when the judge summarized the rebuttal evidence—testimony of the witness, who was the wife of the deceased in order to establish that the relations between the latter and the witness Juan Flores, presented by the defense and who was the step-father of the victim were not so good—expressed himself to the effect that the witness had said: "Sometimes he argued with his father, when the truth is that this witness at no time stated such a thing."

Aside from the fact that this benefited the defendant since it was being established by the evidence of the district attorney itself that the deceased was a person given to arguments, the truth is that if they are considered jointly, that is, the question and the answer, the witness actually testified what the judge expressed.

3-5. The third and fourth errors are grounded on the fact that the verdict is contrary to the evidence and contrary to law. The facts, such as we have set them forth, dispose of these two errors. The fifth error challenges the instruction of self defense. These instructions followed the rule established in our decisions. *People* v. *Túa*, 84 P.R.R. 37 (1961).

The errors assigned were not committed. The judgment rendered on May 2, 1960 by the Superior Court, Humacao Part, will be affirmed.